## GULF & S. I. R. Co. *v.* CURTIS.*

(Division A.    March 7, 1927.    Suggestion of Error Overruled April 18, 1927.)

[113 So. 135.    No. 26293.]

1. COMMERCE. *Hauling empty freight car from one state to another is "interstate commerce," beginning when car is designated and begins to move (Federal Employers' Liability Act [U. S. Comp. St., sections 8657-8665]).*

   Hauling empty freight car from one state to another is "interstate commerce," within Federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), interstate character of which begins when and not until car has been designated therefor and has begun to move for such purpose.

2. COMMERCE. *Use of freight cars in interstate commerce held not to begin before switching crew commenced delivery to other railroad under interchange agreement (Federal Employers' Liability Act [U. S. Comp. St., sections 8657-8665]).*

Where empty freight cars for use in interstate commerce were delivered by one railroad to another in accordance with interchange agreement, use in interstate commerce, within Federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), *held* not to begin prior to time switching crew commenced to move them for delivery to other railroad pursuant to orders required before delivery was to be made.

*Corpus Juris-Cyc References: Commerce, 12CJ, p. 46, n. 29. As to what employees are engaged in interstate commerce within the Federal Employers' Liability Act, see annotation in 10 A. L. R. 1184; 14 A. L. R. 732; 24 A. L. R. 634; 29 A. L. R. 1207; 18 R. C. L. 852; 3 R. C. L. Supp. 862; 4 R. C. L. Supp. 1218; 5 R. C. L. Supp. 1008.

APPEAL from circuit court of Jefferson Davis county. HON. J. Q. LANGSTON, Judge.

Action for Mrs. Ruby Curtis, administratrix of the estate of George D. Curtis, deceased, against the Gulf & Ship Island Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*T. J. Wills,* for appellant.

The jury returned a verdict for fifteen thousand dollars for plaintiff. Defendant appeals alleging that deceased was engaged in interstate commerce; hence the Mississippi *prima-facie* statute was erroneously invoked.

The service which this train crew, including the deceased George D. Curtis, was performing was a link in the chain of the movements of the outbound loaded cars moving in interstate commerce from points on the New Orleans Great Northern Railroad *via* Columbia and over the Gulf & Ship Island Railroad to the northern markets and the movement of the empty cars coming from foreign lines to supply the needs of the New Orleans Great Northern in furnishing transportation facilities for shipments destined for points outside of and beyond the state of Mississippi. This movement was but a sector in the circle of the empty foreign cars that were moving into Gulf & Ship Island and New Orleans Great Northern

points to be loaded with freight and consigned back in the direction of their home lines in the transportation system between the states. For cases throwing light on this point, see *N. C. R. R. Co.* v. *Zachary,* 232 U. S. 248, 34 Sup. Ct. Rep. 305; *Eureka Pipe Line* v. *Hollan,* 257 U. S. 265, 42 Sup. Ct. 101; *Pedersen* v. *D. L. & W. R. R. Co.,* 229 U. S. 146, 33 Sup. Ct. Rep. 648; *Shanks* v. *D. L. & W. R. R. Co.,* 239 U. S. 556, 36 Sup. Ct. Rep. 188; *Erie R. R. Co.* v. *Collins,* 253 U. S. 77, 40 Sup. Ct. Rep. 450; *B. & O. S. W. R. R. Co.* v. *Settle et al.,* 260 U. S. 166, 43 Sup. Ct. Rep. 28.

It will be observed by the court that every one of the cars here was a foreign car. Not a one of the cars in this movement belonged either to the Gulf & Ship Island Railroad or the New Orleans Great Northern Railroad. They were empties belonging to foreign roads. They were being moved to Columbia where nineteen of them were for immediate delivery to the New Orleans Great Northern to be loaded in interstate commerce back home. It is shown that every car so ordered was ordered for the purpose of being loaded in interstate commerce. It is shown that every car delivered to the New Orleans Great Northern by the Gulf & Ship Island Railroad was loaded and moved in interstate commerce. It is further shown that the New Orleans Great Northern had a standing order or instructions to the conductor operating the New Orleans Great Northern train into Columbia that on the receipt of these cars they were to be carried from Columbia, Mississippi, to Bogalousa, Louisiana, to the yard for distribution in the fulfillment of orders for cars to be loaded in interstate commerce. *Trowbridge* v. *Kansas City, etc., R. R. Co.,* 179 S. W. 777, is so nearly like the case at bar that it might be termed a ''White Horse'' case. See, also, *Penn. R. R. Co.* v. *Knox,* 218 Fed. 748; *Champlain Co.* v. *Brottleboro,* 260 U. S. 366, 43 Sup. Ct. Rep. 146; *Hughes Bros. Timber Co.* v. *State of Minn.,* Adv. Op. 214, 47 Sup. Ct. Rep. 170.

From the authorities above cited the inevitable conclusion must be reached that the movement of the cars was an interstate movement. The appellant being engaged in interstate commerce in making the said movement and the deceased George D. Curtis being employed in making the said movement, the Federal statute applied.

The Federal statute applying, the Mississippi *prima-facie* statute is not controlling in this case. The Mississippi *prima-facie* statute, section 1985, Code of 1906, was before the supreme court of the United States on the question of its constitutionality in the *Turnipseed case,* 219 U. S. 35, in which the court held that the statute was constitutional and insofar as it was a rule of evidence in the state of Mississippi in cases tried under the state law, it was applicable. The *prima-facie* statute was invoked in three cases subsequent to the decision in the Turnipseed case brought under the Federal Employer's Liability Act. These cases went to the supreme court of the United States and that court held that the state law had no application to cases brought under the Federal Employer's Liability Act. See *N. O. & N. E. R. R. Co.* v. *Harris,* 247 U. S. 367; *Y. & M. V. R. R. Co.* v. *Mullins,* 249 U. S. 531; *N. O. & N. E. R. R. Co.* v. *Scarlet,* 249 U. S. 528.

*Mounger & Mounger* and *C. E. Thompson,* for appellee.

The court correctly ruled that the case was governed by the laws of Mississippi and that the Federal Employer's Liability Act did not control the case. Curtis was not engaged in interstate commerce. The rule is laid down by the supreme court of the United States in *I. C. R. R. Co.* v. *Behrens,* 58 L. Ed. 1051; *C. B. & Q. R. R. Co.* v. *Herrington,* 60 L. Ed. 941; *Shanks* v. *Delaware & L. R. R. Co.,* 60 L. Ed. 436; *Minn. & St. P. R. R. Co.* v. *Winters,* 142 U. S. 355, 61 L. Ed. 358; *Industrial Accident Commission* v. *Davis,* 66 L. Ed. 888; *B. & O. R. R. Co.* v. *Burtch,* 263 U. S. 539, 68 L. Ed. 433; *Miss. Cent. R. R. Co.* v. *Knight,* 103 So. 377; *Davis* v. *B. & O. R. R. Co.,* 10 Fed. (2nd) 140.

"When the question arises whether the federal act applies, the burden is upon the person asserting it to show that the facts at the time of the happening abated the original and primary sovereignty of the state and permitted the exceptional and limited power of the federal government to attach." 18 R. C. L., Master & Servant, section 316, page 856; L. R. A. 1915C page 64; 12 A. L. R. 710; *Miss. Cent. R. R. Co.* v. *Knight,* 103 So. 377; *Dupuis* v. *La. Ry. & Nav. Co.,* 99 So. 709; *Kasulka* v. *L. & N. R. R. Co.,* 105 So. 187; *Palermo* v. *Erie R. R. Co.,* 173 N. Y. S. 456.

We say, therefore, that it is not important how Curtis had been previously engaged or what was contemplated for the future, since nothing for the future had been fixed. The moving of the cars from Mendenhall to Columbia, which was the service in which he was engaged, was merely putting these cars in a convenient place, from which they could be taken and used as required, and so we say that we can apply to the case at bar the very words of Judge HUGHES in the Herrington case and these words refute the contention of the appellant.

For other authorities on this question, see: Section 663, Thornton's Federal Employer's Liability Act; *L. & N. R. R. Co.* v. *Strange* (Ky.), 161 S. W. 239; *Palermo* v. *Erie R. R. Co.,* 173 N. Y. S. 456. We very strongly rely for affirmance upon the case of *Miss. Cent. R. R. Co.* v. *Knight,* 103 So. 377.

Argued orally by *T. J. Wills,* for appellant, and *W. D. Mounger* and *C. E. Thompson,* for appellee.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment for damages for the death of the appellee's intestate, alleged to have been caused by the negligence of the appellant.

The court below instructed the jury in accordance with the state *prima-facie* evidence statute; and one of the

appellant's contentions there was, and its only conten-
tion here is, that this statute has no application, for the
reason that the appellee's intestate was engaged in in-
terstate commerce when injured, and, consequently, the
case is governed by the Federal Employers' Liability Act
(U. S. Comp. St., sections 8657-8665). The case will be
stated in so far only as is necessary for a decision of
that question.

The Gulf & Ship Island Railroad and the New Orleans
Great Northern Railroad are common carriers, engaged
in both intrastate and interstate commerce, and have a
physical connection at Columbia, Miss., where they de-
liver cars to each other under an interchange arrange-
ment which requires the former to deliver to the latter
"ten box cars and five open cars per day." Under a
custom of railroads to expedite the return of cars to
the road by which they are owned, the cars which each
of these roads delivered to the other were cars owned
by other railroads, and the cars received by each were
usually used by it for interstate shipments, the cars re-
ceived by the New Orleans Great Northern Railroad be-
ing usually carried by it to Foxworth, a station on its
road in Mississippi, or to Bogalousa, La., for loading.

George D. Curtis, the appellee's intestate, was a brake-
man on one of the appellant's extra trains, which ran
north daily from Columbia to Mendenhall, Miss., and
returned. The train was made up for its trip north at
Columbia, and for its trip south at Mendenhall, Miss.
On November 30, 1925, the conductor of this train was
ordered by the proper railroad official to bring thirty-
four empty freight cars from Mendenhall to Columbia.
He complied with this order, selecting the cars himself,
and they constituted the whole of the train other than
the engine and caboose. The conductor's duty on arriv-
ing at Mendenhall, and that which he discharged on the
occasion in question, was to place the cars on the track
designated therefor, and to report to the station agent
the arrival of the train and the cars composing it. Cur-

tis was killed by falling from one of the cars of the train when it was entering the railroad yard at Columbia.

It was the duty of the appellant's station agent, at Columbia, on the night preceding the day of delivery of cars to the New Orleans Great Northern Railroad, to select the cars to be so delivered, and to leave a list thereof where it could be obtained early the next morning by the appellant's switching crew, whose duty it was then to take the list and deliver the cars to the New Orleans Great Northern Railroad. After receiving the report of the conductor of the train, from which Curtis fell and was killed, this agent selected therefrom nineteen cars, and placed the list where it could be found the next morning by the switching crew, and they delivered the cars the next morning to the New Orleans Great Northern Railroad. The bringing of these cars from Mendenhall to Columbia was necessary in order for the Gulf & Ship Island Railroad to comply with its obligation to deliver cars to the New Orleans Great Northern Railroad the next day.

The hauling of an empty freight car from one state to another is interstate commerce, and the interstate character of such a car begins when, and not until, it has been designated therefor, and has begun to move for the purpose of being put into a train of the cars, or attached to an engine, that would carry it forward on its journey. Leaving out of view the fact that the cars here in question might not have been used by the New Orleans Great Northern Railroad in interstate commerce, under the facts here in evidence their use in such commerce did not begin prior to the time when the appellant's switching crew commenced to move them for delivery to the New Orleans Great Northern Railroad pursuant to the order of the appellant's station agent so to do.

*Affirmed.*